## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONTAYE DESHIELDS, | : | CIVIL NO: 3:13-CV-01965 |
| | : | |
| Petitioner, | : | |
| | : | (Judge Nealon) |
| v. | : | |
| | : | |
| JOHN KERESTES, | : | |
| | : | (Magistrate Judge Schwab) |
| Respondent.[1] | : | |

## REPORT AND RECOMMENDATION

The petitioner, Dontaye DeShields ("DeShields"), filed this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his May 15, 2008, York County, Pennsylvania jury trial conviction for third-degree murder, for which he was sentenced to serve 20 to 40 years in a state correctional institution. After being served with the federal petition, the respondent filed a motion to dismiss on the grounds that the petition was untimely filed. In opposition, DeShields argues that he is entitled to equitable tolling for the conduct and actions of his attorney, Peter Vaughn, Esq. ("Vaughn"), on initial collateral review. For the reasons set forth herein, it is recommended that DeShields' habeas claims be dismissed as time-barred.

---

[1]     John Kerestes is the proper party respondent as he is currently the Superintendent at SCI Mahanoy and has custody of DeShields. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

II.  **Background and Procedural History**.

On initial collateral review, the Pennsylvania Superior Court succinctly summarized the facts giving rise to DeShield's arrest as follows:

> On August 7, 2007, La'Mar Porter ("Porter") was standing outside of his residence at 126 Edgar Street, York, Pennsylvania, along with Rodney Pinckney ("Pinckney") and several other people, including Theodore Varcarcel ("Theo"), the victim. Porter noticed a light-colored automobile traveling down Edgar Street. Porter knew that the car belonged to DeShields. Upon seeing DeShields's automobile on Edgar Street, Porter suggested to the others that they leave that location. Porter and the others then walked to the corner of Edgar and Poplar Street, and proceeded up Poplar Street. At that point, Porter heard a gunshot, looked over his shoulder, and saw DeShields standing on the corner shooting his gun. Porter and the others ran away from the gunshots.
>
> Subsequently, a person with Porter received a call on his cell phone from Theo. Porter and that Person went to look for Theo. However, one of the neighbors in the area came up to them, indicating that he/she had found Theo in an alley, and Theo had died.
>
> On August 5, 2007, Detective Anthony Fetrow of the York City Police interviewed Pinckney, who gave Detective Fetrow an audiotaped statement. In that statement, Pinckney described an incident in which DeShields had robbed him of his cell phone at gunpoint. Pinckney stated that, after the robbery, he went to the corner of Poplar and Edgar, where he joined Theo, Porter, and some other people. While on the corner with the others, Pinckney saw DeShields riding in the passenger seat of a tan car as it drove down the street. One of the men told Porter to "get the gun," and he and Porter walked toward the stop sign to see where the tan car had gone. As those two men started to walk back toward Pincknet and the others, DeShields emerged from an alleyway near Edgar. Pinckney then heard seven or eight gunshots, but did not see who was shooting. Upon hearing the

gunshots, Pinckney and others ran up Poplar Street.  When the group reunited, a person from the original group came running around the corner and indicated that Theo had been shot. Subsequently, DeShields called the cell phone of Lloyd Varcarcel ("Lloyd"), Theo's brother, from Pinckney's phone and said, "Who got the last laugh?"  DeShields called Lloyd's phone several times, and Lloyd told DeShields that he better "duck" when Lloyd saw him.  [Subsequently,] DeShields was charged with first- and third-degree murder relating to the death of Theo.

*Commonwealth v. DeShields*, No. 1044 MDA 2012, slip op. at *1-*2 (Pa. Super. Ct. June 20, 2013).

Following his arrest, DeShields was convicted for third-degree murder, on May 15, 2008, by a jury in York County, Pennsylvania.[2]  On July 28, 2008, DeShields was sentenced to serve 20 to 40 years in state prison.  Thereafter, DeShields filed a timely direct appeal to the Pennsylvania Superior Court.  On October 9, 2009, the Pennsylvania Superior Court affirmed DeShields' conviction. Following the Superior Court's decision, DeShields filed a petition for allowance of appeal to the Supreme Court of Pennsylvania, which was ultimately denied on March 23, 2010.  DeShields did not seek further direct review in the United States Supreme Court.

Then, on April 21, 2011, DeShields filed a timely petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA").  Nearly three months later,

---

[2]     Unless otherwise noted, these undisputed facts can be found in the habeas corpus petition (*Doc.* 1), respondent's motion to dismiss and reply brief (*Docs.* 12 & 15), and DeShield's brief in opposition (*Doc.* 14).

on July 26, 2011, DeShields' PCRA petition was denied.   Rather than filing a timely appeal of the PCRA court's decision, DeShields waited approximately 42 days, and filed his appeal nearly 14 days late.  Consequently, on March 28, 2012, the Pennsylvania Superior Court quashed Deshields' appeal as untimely.   That did not end the matter, however.

On April 18, 2012, DeShields filed a petition to reinstate his PCRA appellate rights, which was ultimately granted.   Thereafter, DeShields filed an out-of-time, PCRA appeal to the Pennsylvania Superior Court.   Nonetheless, on June 20, 2013, the Pennsylvania Superior Court affirmed the PCRA court's denial of DeShields' PCRA petition.   DeShields did not seek further collateral review in the Supreme Court of Pennsylvania; instead, on July 18, 2013, DeShields filed this federal habeas corpus petition attacking his York County jury trial conviction.

After filing this federal habeas petition, I conducted a preliminary review under Rule 4 of the Rules Governing Section 2254 Cases.   Rather than recommending dismissal, I ordered DeShields to fill out an election form, pursuant to the Third Circuit's mandate in *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000). *Doc.* 4.   In compliance with my Order, DeShields indicated that he intends to proceed on his petition as filed.  *Doc.* 5.  Consequently, I ordered the respondent to file an answer and a memorandum of law addressing DeShields' petition.  *Doc.* 6.

On December 3, 2013, respondent timely filed its response in the form of a motion to dismiss. *Doc.* 12. Therein, respondent asserts that DeShields' petition is time barred by the applicable statute of limitations and is not subject to equitable tolling. *Id.* Upon the issuance of a briefing order, DeShields filed a timely reply along with exhibits in the form of correspondence between him and Vaughn. *Docs.* 14 & 14-1. DeShields does not address the issue of statutory tolling; rather, he argues that he is entitled to equitable tolling. More precisely, DeShields argues that he is entitled to equitable tolling of the federal habeas corpus statute of limitations because Vaughn's alleged "ineffectiveness [for failing to file a timely PCRA appeal to the Pennsylvania Superior Court] surpasses a mere 'garden variety claim of excusable neglect.'" *Doc.* 14 at 3. In so arguing, DeShields draws on the recent United States' Supreme Court decisions in *Holland v. Florida* and *Maples v. Thomas* to assert that Vaughn effectively abandoned him. *See id.* at 4.

On January 12, 2014, respondent filed a timely reply brief. *Doc.* 15. In the reply brief, respondent concedes that Vaughn was "ineffective" when he failed to file a notice of appeal from the PCRA court's denial of relief. *Id.* Moreover, the respondent concedes that "[DeShields'] arguments about [Vaughn] abandoning him and not acting diligently on his behalf are well-founded…" *Id.* at 1-2. Nevertheless, respondent contends that Vaughn's actions and conduct only impeded DeShields' ability to file an appeal in state court and that Deshields was

5

not prevented from filing unexhausted claims in federal court in order to stop the statute of limitations from expiring and asking this Court to enter an order staying the petition. *Id.* at 2-3.

The motion, having been fully briefed, is ripe for disposition on the merits. Given the arguments and evidence presented, I declined to hold a hearing on this matter. For the reasons that follow, I find that DeShields' petition is time-barred by the statute of limitations governing Section 2254 habeas corpus petitions, and I recommend that the habeas grounds be dismissed accordingly.

## III.  Discussion.

### A. State Prisoner Habeas Relief – The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the State;
> >
> > . . .

6

> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).  As explained, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. The statute of limitations issue pending before me, however, is a non-jurisdictional, threshold issue that only concerns itself with the procedural benchmarks for filing a federal habeas corpus petition.

**B. The Federal Habeas Corpus Statute of Limitations**.

Among the procedural prerequisites is the requirement that petitioners timely file petitions seeking habeas corpus relief.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners.  In pertinent part, § 2244(d)(1), provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Additionally, 28 U.S.C. § 2244(d)(2), provides that:

>The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." *Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000). Thus, the courts have construed this tolling provision in a forgiving fashion, and in a manner which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review. *Swartz*, 204 F.3d at 424-25.

Moreover, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes an application which is filed in a timely fashion under state law.

8

Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State postconviction or other collateral review" and will not toll the limitation period. *Pace v. DiGuglielmo*, 544 U.S. 408, 412-14 (2005); *Long v. Wilson*, 393 F.3d 390, 394-95 (3d Cir. 2004).

AEDPA's one-year limitation period, however, is not a jurisdictional bar to the filing of habeas petitions; *Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 617-18 (3d Cir. 1998), and, therefore, is subject to equitable tolling. *Id*. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' The petitioner must [also] show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." *Id*. at 618-19 (citations omitted).

The decision to equitably toll § 2244(d), "must be made on a case-by-case basis." *Holland v. Florida*, 560 U.S. 631, 649-50 (2010) (quoting *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)). "In each case, there is a need for 'flexibility,' 'avoiding mechanical rules,' and 'awareness . . . that specific circumstances, often

hard to predict in advance, could warrant special treatment in an appropriate case.'" *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011) (quoting *Holland*, 130 S.Ct. at 650). Thus, there are "no bright lines in determining whether equitable tolling is warranted in a given case." *Id*.

### C. Statutory Tolling.

Deshields' conviction became final on June 21, 2010, when the time for seeking direct review in the United States Supreme Court expired. *See* Sup. Ct. R. 13(1); *see also Morris v. Horn*, 187 F.3d 333, 337 n. 1 (3d Cir. 1999) ("After ninety days, the Pennsylvania Supreme Court's decision became final because the time for seeking certiorari expired."). At this juncture, the federal habeas corpus statute of limitations started to run.

Approximately 304 days later, on April 21, 2011, DeShields filed a timely PCRA petition. The PCRA court dismissed DeShields' PCRA petition on July 26, 2011, and his appeal to the Pennsylvania Superior Court was untimely. As a result, the Pennsylvania Superior Court quashed his PCRA appeal accordingly. Thereafter, DeShields filed a petition to reinstate his PCRA appellate rights, which was granted, and then he filed an out-of-time PCRA appeal. In the meantime, however, another 285 days lapsed and such time was not tolled under the federal habeas corpus statute of limitations. *See Rivera v. Krysevic*, No. 1:07-CV-0479, 2008 WL 2563249, at *2-*3 (M.D. Pa. June 24, 2008) (Kane, J.) (citing cases)

10

("An out-of-time appeal does not operate to revive the time during which a state collateral petition was pending before the state court."). Consequently, I find that 589 days of total untolled time had lapsed under the federal habeas corpus statute of limitations, prior to the Pennsylvania Superior Court's decision to take up DeShields' out-of-time PCRA appeal.

Accordingly, DeShields' federal habeas corpus petition is untimely under the federal statute of limitations period. Moreover, DeShields does not assert that there was an impediment to filing his habeas petition which was caused by state action, that his petition involves a right which was newly recognized by the United States Supreme Court, or that there are new facts which could not have been previously discovered. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). As such, DeShields is time-barred from presenting his grounds under § 2254, unless his federal habeas corpus petition is subject to equitable tolling.

### D. Equitable Tolling.

As referenced, *supra*, a petitioner bears the burden of establishing entitlement to equitable tolling through two elements: (1) demonstrating that "extraordinary circumstances stood in the way of filing" and (2) exercising reasonable diligence in pursuing his rights. *Pabon*, 654 F.3d at 399. For the following reasons, I find that equitable tolling is not warranted in DeShields' case.

According to DeShields, he is entitled to equitable tolling of the federal habeas corpus statute of limitations because of the actions and conduct of Vaughn. According to DeShields, he asked Vaughn to file a notice of appeal to the Pennsylvania Superior Court in the event that his PCRA petition was denied. *Doc.* 14 at 3; *see Doc.* 14-1 at 2.  However, according to Vaughn, in his September 7, 2011, letter to DeShields, he filed the appeal approximately 14 days late because he mistakenly believed that the petition was still pending.   *Doc.* 14-1 at 2.  In apparent reference to the timeliness of DeShields' PCRA appeal, Vaughn further advised that he did not believe that the late filing of the appeal would be an issue. *See id.* at 2, 10.   Nevertheless, as stated, *supra*, Vaughn was incorrect, and DeShields' PCRA appeal to the Pennsylvania Superior Court was in fact quashed as untimely.  It would take approximately 285 more days until DeShields' PCRA appeal was docketed in the Pennsylvania Superior Court; all of that time counting against DeShields' deadline to file a federal habeas corpus petition.

Liberally construing the contents of his brief, DeShields argues that Vaughn abandoned him as counsel or, at the very least, that Vaughn's conduct was more than just a "garden variety claim of excusable neglect." *See Doc.* 14 at 3, 4 & 7. Moreover, as previously mentioned, respondent concedes that DeShields' abandonment argument is well-founded, but argues that the attorney abandonment only interfered with DeShields' ability to file a PCRA appeal rather than his ability

to file a "protective" petition in federal court.  While I agree with respondent that DeShields is not entitled to equitable tolling, I disagree that Vaughn abandoned DeShields.

In this posture, DeShields' argument turns on the United States' Supreme Court's opinions in both *Holland v. Florida* and *Maples v. Thomas*.  In *Holland*, the Supreme Court recognized that an attorney's egregious error or neglect may constitute an extraordinary circumstance for equitable tolling purposes.  *See Holland*, 130 S.Ct. at 2555–65.  An "egregious error" includes instances where an attorney fails to file an appeal after an explicit request from the petitioner, "affirmatively deceives the petitioner about filing a direct appeal," or "persistently neglects the petitioner's case."  *Schlueter v. Varner*, 384 F.3d 69, 76–77 (3d Cir. 2004); *see Velazquez v. Grace*, 277 F.App'x 258 (3d Cir. 2008).

Two years later in *Maples v. Thomas*, the Supreme Court revisited the question of when attorney misconduct might rise to the level of "extraordinary circumstances beyond a [petitioner's] control," but in the context of what it takes to establish cause to excuse a state procedural bar to federal habeas relief. 132 S.Ct. at 924. The petitioner in *Maples* was an Alabama death-row inmate who had been represented by two *pro bono* attorneys from a New York law firm and a local attorney recruited for the sole purpose of allowing the out-of-state attorneys to be admitted *pro hac vice*.  *Id.* at 918–19.  While Maples' state post-conviction petition

13

was pending, the two New York attorneys left their firm for positions that rendered them ineligible to continue to represent him. *Id.* at 919, 924. Neither attorney, however, notified Maples of his departure and resulting inability to represent Maples. *Id.* at 919. Nor did either of them ask the state trial court for leave to withdraw or move for substitution of counsel. *Id.* Without the assistance of his listed attorneys of record, Maples did not receive timely notice of the denial of his state post-conviction petition and, as a result, failed to timely appeal that ruling, which led to the procedural default of his claims in federal court. *Id.* at 920–21.

In its discussion in *Maples*, the Supreme Court reaffirmed the general rule that, "under well-settled principles of agency law," a petitioner "bears the risk of negligent conduct on the part of his [attorney]" and, for that reason, is ordinarily bound by counsel's failure to meet a filing deadline. *Id.* at 922 (quotation marks omitted). The Court held, however, that "[a] markedly different situation is presented . . . when an attorney abandons his client without notice" and thereby "sever[s] the principal-agent relationship," at which point counsel's "acts or omissions . . . cannot fairly be attributed to the client." *Id.* at 922–23 (quotation marks and brackets omitted).

Here, Vaughn did not altogether fail to file an appeal, he did not affirmatively deceive DeShields about filing an appeal, and he did not persistently neglect DeShields' case. Furthermore, Vaughn did not withdraw from representing

14

DeShields, renounce his role as counsel, utterly shirk all of his professional responsibilities, or walk away from their attorney-client relationship. As well, despite missing the filing deadline on the PCRA appeal, the written correspondence between Vaughn and DeShields reflects that Vaughn did not fail to keep his client abreast of key developments in his case, did not ignore his clients' inquiries or concerns, and did not sever nearly all communication with his client for a period of years – or even for months or even for weeks. *See Holland*, 130 S.Ct. at 2564 (counsel, among other deficiencies, "failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, [ ] despite Holland's many pleas for that information," and "failed to communicate with his client over a period of years, despite various pleas from Holland that [counsel] respond to his letters"); *Maples*, 132 S.Ct. at 923 (characterizing *Holland* as a case of abandonment involving "counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years") (quotation marks omitted). And unlike the lawyers in *Maples*, Vaughn did not wholly desert, forsake, or abandon his client without notice, thereby ceasing to serve as his agent "in any meaningful sense of that word" and leaving him "without any functioning attorney of record." *See Maples*, 132 S.Ct. at 924–27. Instead, Vaughn apparently maintained regular contact with DeShields throughout his state post-conviction proceedings;

responded to DeShields' inquiries and concerns about the filing a PCRA appeal; encouraged further communication from, and suggestions by, DeShields; and eventually filed both a PCRA appeal and out-of-time PCRA appeal.   In sum, Vaughn did not act egregiously nor did his conduct amount to abandonment.[3]

Even assuming, for the sake of argument, that Desheilds was abandoned by Vaughn, DeShields must also show that he acted with reasonable diligence; not maximum, extreme, or exceptional diligence. *See Ross v. Varano*, 712 F.3d 784, 784 (3d Cir. 2013) (citing *Holland*, 130 S.Ct. at 2565).   A determination of whether the petitioner has exercised reasonable diligence is made under a subjective test and consideration of the totality of circumstances. *See Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004).   If a petitioner has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is severed and the extraordinary circumstances did not prevent timely filing. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003).

---

[3]   Although federal courts typically distinguish a claim of attorney negligence from one involving attorney abandonment, as I do here, at least one court of appeals has very recently held that "attorney negligence, however gross or egregious, does not qualify as an 'extraordinary circumstance' for purposes of equitable tolling; abandonment of the attorney-client relationship, such as [what] may have occurred in *Holland*, is required." *Cadet v. Florida Dep't. of Corrections*, 742 F.3d 473 (2014).

16

As the respondent points out, if DeShields was concerned about the federal statute of limitations period expiring he could have filed a protective petition, especially whereas here time remained on the federal habeas clock when DeShields was notified of Vaughn's error. *See Pace*, 544 U.S. at 416 (citing *Rhines v. Weber*, 544 U.S. 269, 278, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005)); *see also Heleva v. Brooks*, 581 F.3d 187, 190–92 (3d Cir. 2009) (discussing the practice of filing "protective" habeas petitions in the Third Circuit).  DeShields did not file a protective petition, however.  Instead, DeShields proceeded to attack his conviction in state court.  DeShields, therefore, is precluded from equitable tolling because he failed to act with reasonable diligence.  *See Jackson v. Coleman*, No. 3:11-CV-1837, 2013 WL 4083859 (M.D. Pa. Aug. 13, 2013)(dismissing habeas corpus petition as time-barred where the petitioner still had time remaining to file a habeas corpus petition at the point when counsel ceased representation of the petitioner).

## IV. <u>Recommendation</u>.

Accordingly, for the reasons stated above, **IT IS RECOMMENDED** that:

1) The Petition for a Writ of Habeas Corpus (*Doc.* 1), filed pursuant to 28 U.S.C. § 2254, be **DISMISSED AS UNTIMELY**;

2) The respondent's motion to dismiss as untimely (*Doc.* 12) be **GRANTED**; and

3) A finding be made that there is no probable cause to issue a certificate of

   appealability.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **10th** day of **April, 2014**.

**_S/ Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge

18