IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

JUN 1 3 2014

PER_____
DEPUTY CLERK

DONTAYE MALIK DESHIELDS,  :
    Petitioner  :
      :   CIVIL NO. 3:13-CV-1965
    v.  :
      :   (Judge Nealon)
JOHN KERESTES, ET AL.,  :   (Magistrate Judge Schwab)
    Respondents  :

## MEMORANDUM

## Background

On July 18, 2013, Petitioner, Dontaye Malik DeShields, who is currently confined in the State Correctional Institution in Frackville, Pennsylvania ("SCI-Mahanoy"), filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his May 15, 2008 third-degree murder conviction decided by a jury trial in the York County Court of Common Pleas ("YCCP"), for which he was sentenced to serve twenty (20) to forty (40) years in a state correctional institution.  (Doc. 1).

By way of background, on August 4, 2007 at approximately 2:34 a.m., Theodore Varcarcel was killed in the City of York.  (Doc. 12-1, p. 49).  At 5:15 a.m., witness La'Mar Porter met with the York City Police and informed them he witnessed Petitioner shooting a gun in the East End of York around the time of the

murder. (Doc. 12-1, p. 49). Witness Mace Murder gave a taped statement at 12:30 p.m. on the day of the shooting, stating to York County Detective Fetrow that Petitioner had stolen his phone before the murder, that he saw Petitioner's vehicle drive past him just before the shooting, and that he later heard others indicate that Petitioner had murdered Theo Varcarcel. (Id. at 49-50). He also indicated that immediately after the shooting, he heard Petitioner use the cell phone he had stolen from him to call Lloyd Varcarcel ("Varcarcel"), Theo's brother. (Id. at 50). As a result, Petitioner was charged with criminal homicide, and murder in the first and third degree. (Id.). He was found guilty of murder in the third degree by a jury, and was sentenced to twenty (20) to forty (40) years in a state correctional institution. (Id. at 50-51).

Petitioner filed a direct appeal, which was denied on October 9, 2009. (Id. at 51). Subsequently, his allocatur petition to the Pennsylvania Supreme Court was denied on March 23, 2010. (Id. at 52). On April 21, 2011, Petitioner filed a petition under the post-conviction relief act ("PCRA"), alleging that his trial counsel, Korey Leslie, Esquire ("Leslie") was ineffective because: (1) he failed to call Varcarcel as a witness; (2) he failed to allege a Brady violation on appeal; (3) he failed to request a cautionary jury instruction; and (4) he failed to request a Kloiber instruction. (Id. at 52-55). This petition was denied on July 26, 2011,

after an evidentiary hearing was held. (Doc. 12-1, p. 120). On September 6, 2011, Petitioner filed a PCRA appeal, which was quashed as untimely on March 28, 2012. (Id.). On April 18, 2012, Petitioner filed a Motion to Reinstate his PCRA appeal, which was granted on May 10, 2012. (Id.). On June 6, 2012, Petitioner filed his out-of-time PCRA appeal, which was denied on the merits on June 21, 2013. (Id.).

On July 18, 2013, Petitioner filed the instant habeas petition alleging, inter alia, that his conviction should be overturned because his Sixth Amendment right to effective assistance of counsel was violated by Leslie. (Doc. 1, p. 15); (Doc. 12-1, pp. 52-55). More specifically, he alleges that Leslie was ineffective because: (1) he failed to call Varcarcel as a witness; (2) failed to raise a Brady claim violation on appeal; (3) failed to request a cautionary jury instruction; and (4) failed to request a Kloiber instruction. (Id.).

On December 3, 2013, Respondents filed a Motion to Dismiss the petition as untimely, asserting that the habeas petition was not filed within the one-year statute of limitations provided by 28 U.S.C. § 2254, and that neither statutory nor equitable tolling is warranted. (Doc. 12).

On January 6, 2014, Petitioner filed a Brief in Opposition to Respondents' Motion to Dismiss, in which Petitioner does not address the statutory tolling issue

alleged in the Motion to Dismiss, but rather argues that he is entitled to equitable tolling due to the ineffectiveness of his counsel, Peter Vaughn, Esquire ("Vaughn") during the PCRA appellate process. (Doc. 14). Respondents filed a reply brief on January 12, 2014, acknowledging that Vaughn was ineffective in untimely filing Petitioner's PCRA appeal. (Doc. 15). However, Respondents allege that this ineffectiveness did not amount to a situation that now warrants equitable tolling because Petitioner was not prevented from filing his unexhausted claims in federal court before the expiration of the statute of limitations and asking for an order staying the petition. (Id. at 2-3).

On April 10, 2014, Magistrate Judge Susan E. Schwab issued a Report and Recommendation ("R&R"), recommending that this Court dismiss Petitioner's habeas petition as untimely because it was not filed in accordance with statutory tolling rules and does not warrant equitable tolling. (Doc. 16, pp. 11, 17).

On April 28, 2014, Petitioner filed Objections to the R&R, arguing that Vaughn's ineffectiveness during the PCRA appellate process warrants the application of equitable tolling of the one-year statute of limitations. (Doc. 17). He does not object to the portion of the R&R which concluded that statutory tolling was not warranted. (Id.).

4

**Standard of Review**

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process"); Mutombo v. Carl, 2003 U.S. Dist. LEXIS 27124 (M.D. Pa. 2003) (Kane, J.); Cf. Cruz v. Chater, 990 F. Supp. 375, 377 (M.D. Pa. 1998) (Vanaskie, J.) (holding that in the absence of objections, review may properly be limited to ascertaining whether there is clear error.). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1)(C); M.D. Pa. Local Rule 72.3.

**Discussion**

1. **Statutory Tolling**

This Court agrees with the portion of the R&R that concludes the habeas petition should be dismissed because it was not raised within the one-year statute of limitations. (Doc. 16, pp. 10-11). Federal habeas corpus petitions filed by a

person in state custody are subject to a one-year statute of limitations, which begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Furthermore, only the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2); see Artuz v. Bennett, 531 U.S. 4, 8 (2000). "[T]he term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz v. Meyers, 204 F.3d 417, 424 (3d Cir. 2000). Additionally, a "properly filed application for state post-conviction or other collateral review only includes an application filed in a timely manner under state law." Meyers, 204 F.3d at 424-25. "If a state court determines that a petition is untimely, 'that would be the end of the matter.'" Satterfield v. Johnson, 434 F.3d 185, 192 (3d Cir. 2006) (quoting Carey v. Saffold, 536 U.S. 214, 226 (2002)).

Here, Petitioner's state convictions became final on June 21, 2010, when the 90-day period during which Petitioner could filed a petition for writ of certiorari in the United States Supreme Court expired. Thus, Petitioner's one-year statute of

limitations period began on this date.  The statute of limitations was tolled on
April 21, 2011, when Petitioner filed a PCRA petition.  At this point in time, from
the period of June 21, 2010, when his conviction became final, to the filing of his
PCRA petition on April 21, 2011, three hundred four (304) days of his one-year
statute of limitations period for his habeas claim had already passed.  After the
PCRA Court denied his petition on July 26, 2011, Petitioner filed a PCRA appeal
on September 6, 2011, twelve (12) days after August 25, 2011, the end date of the
thirty (30) day deadline.

On March 28, 2012, the Superior Court quashed Petitioner's PCRA appeal
as untimely because it was not filed in accordance with the Pennsylvania Rule of
Appellate Procedure 903(a), which provides that "notice of appeal shall be filed
within thirty days after the entry of the order from which the appeal is taken."
(Doc. 12-1, p. 97).  Because he failed to file a timely appeal, the statute of
limitations clock resumed on August 25, 2011, and thus Petitioner had sixty-one
(61) days, until October 25, 2011, to file a federal habeas petition because three
hundred four (304) days had run prior to the filing of the PCRA petition.  The
instant petition was not filed until July 18, 2013, and is therefore time-barred.

While it is true that the reinstatement of direct appellate rights restarts the
habeas statute of limitations clock once the appeal is final, the same cannot be said

for the reinstatement of PCRA appellate rights. See Heiserman v. Lamas, 2013 U.S. Dist. LEXIS 154419 (E.D. Pa. Aug. 26, 2013) (holding that petitioner's habeas petition was untimely, despite the reinstatement of PCRA appellate rights, because this motion was untimely under state law, and untimely petitions are not "properly filed," and, therefore, do not toll, or restart, the federal one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(A).); Pace v. DeGuglielmo, 544 U.S. 508, 514 (2005). Accordingly, the reinstatement of Petitioner's PCRA appellate rights on May 10, 2012 did not toll or restart the clock.

Furthermore, because Petitioner has not filed any objections to the statutory tolling analysis presented in the R&R, and there is no clear error in Magistrate Judge Schwab's statute of limitations analysis, this Court agrees with the R&R that Petitioner's habeas petition under § 2254 is time-barred as long as his petition is not subject to equitable tolling.

## 2. Equitable Tolling

Consistent with the R&R, this Court finds that the habeas petition is not subject to equitable tolling, and should therefore be dismissed as untimely. In the R&R, Magistrate Judge Schwab correctly states that the instant habeas petition is not subject to equitable tolling because Petitioner has not met his burden of proving that extraordinary circumstances stood in the way of the filing, and that he

8

exercised reasonable diligence in pursuing his rights.  (Doc. 16, p. 11) (citing

Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011)).

> The Third Circuit Court of Appeals stated the following:

> > [E]quitable tolling is proper only when the "principles of equity
> > would make [the] rigid application [of a limitation period]
> > unfair." Shendock, 893 F.2d at 1462.  Generally, this will
> > occur when the petitioner has "in some extraordinary way . . .
> > been prevented from asserting his or her rights." Oshiver, 38
> > F.3d 1380.  The petitioner must show that he or she "exercised
> > reasonable diligence in investigating and bringing [the]
> > claims." New Castle County, 111 F.3d at 1126.  Mere
> > excusable neglect is not sufficient.

Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618-19 (3d Cir.

1998).  The decision as to whether equitable tolling applies under § 2244(d) is

made on a case-by-case basis.  Holland v. Florida, 560 U.S. 631, 649-50 (2010)

(quoting Baggett v. Bullitt, 377 U.S. 360, 375 (1964)).  There are "no bright lines

in determining whether equitable tolling is warranted in a given case." Pabon, 654

F.3d at 399.  "In each case, there is a need for 'flexibility,' 'avoiding mechanical

rules,' and 'awareness . . . that specific circumstances, often hard to predict in

advance, could warrant special treatment in an appropriate case.'" Id.

In both his Brief in Opposition to Respondents' Motion to Dismiss and in

his Objections, Petitioner claims that he is entitled to equitable tolling of the

federal habeas one-year statute of limitations because Vaughn was ineffective for

failing to timely file his PCRA appeal. (Doc. 14, p. 3); (Doc. 14-1, p. 2); (Doc. 17, pp. 3-4). He claims that Vaughn negligently filed his appeal twelve (12) days late, and that Vaughn admitted this mistake. Petitioner states that this level of neglect by Vaughn amounts to abandonment in violation of his representation of counsel right guaranteed by Article 1, Section 9 of the Pennsylvania Constitution. (Doc. 14, pp. 3-4, 7); (Doc. 17, p. 4).

Petitioner bases his equitable tolling argument on the decision rendered by the United States Supreme Court in Holland v. Florida, 560 U.S. 631 (2010). In Holland, the Supreme Court held that abandonment by petitioner's attorney amounted to extraordinary circumstances necessitating equitable tolling because "[Attorney] Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters." Id. at 651-52. In reaching this decision, the Supreme Court differentiated between attorney abandonment, stating while clear abandonment presents extraordinary circumstances warranting equitable tolling, a "'garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." (Doc. 17, p. 2) (citing Holland v. Florida, 560 U.S. at 651-52 (2010)).

Two years later, in Maples v. Thomas, 132 S. Ct. 912, 922 (2012), the

10

United States Supreme Court held that an attorney's actions of withdrawing from petitioner's case without notice amounted to abandonment that served as "cause" for petitioner's procedural default.  The Maple Court stated that "under well-settled principles of agency law, [a petitioner] bears the risk of negligent conduct on the part of his [attorney]" and is therefore ordinarily bound by counsel's failure to meet a filing deadline.  However, in situations where an attorney "abandons his client without notice . . . [thereby] sever[ing] the principal-agent relationship[,] [counsel's] acts or omissions . . . cannot fairly be attributed to the client." Thomas, 132 S. Ct. at 922-23.

Therefore, in both Holland and Maples, attorney abandonment, as opposed to mere negligence, was clear.  In Holland, the attorney failed to communicate with, and file appeals for, his client for years.  In Maples, petitioner's attorney exited his firm and the case without notifying his client, thus leaving his client unrepresented and unaware that his filing deadlines had passed.  However, as stated, mere negligence or attorney miscalculation that leads to an untimely filing does not equate to abandonment.  See Downey v. Gavin, 2012 U.S. Dist. LEXIS 9613, *8 (E.D. Pa. Jan. 27, 2012) (holding that petitioner's PCRA counsel's failure to file a timely appeal of the denial of his first PCRA petition alone "is not a sufficient basis for equitable tolling . . . [because] [a]ttorney negligence, such as

failing to file a timely appeal, it not an extraordinary circumstance.").

In the case at hand, Vaughn maintained regular contact with Petitioner throughout his PCRA proceedings, responded to his inquires about filing a PCRA appeal, encouraged communication, and filed both a PCRA appeal and an out-of-time PCRA appeal. This Court agrees with Magistrate Judge Schwab's R&R that stated the following:

> Here, Vaughn did not altogether fail to file an appeal, he did
> not affirmatively deceive DeShields about filing an appeal, and
> he did not persistently neglect DeShields' case. Furthermore,
> Vaughn did not withdraw from representing DeShields,
> denounce his role as counsel, utterly shirk all of his
> professional responsibilities, or walk away from their attorney-
> client relationship. As well, despite missing the filing deadline
> on the PCRA appeal, the written correspondence between
> Vaughn and DeShields reflects that Vaughn did not fail to keep
> his client abreast of key developments in his case, did not
> ignore his clients's inquiries or concerns, and did not sever
> nearly all communication with his client for a period of years –
> or even for months or even for weeks.

(Doc. 16, pp. 14-15). Therefore, in accordance with the decisions rendered in Holland and Maples, while Vaughn's untimely filing of the PCRA appeal twelve (12) days past the filing deadline may have been negligent, this Court cannot conclude that Vaughn's actions amounted to abandonment or that he acted egregiously. Thus, the "extraordinary circumstance" prong of equitable tolling has

not been met.[1]

Moreover, even if Vaughn's actions had amounted to abandonment constituting extraordinary circumstance, Petitioner has failed to prove that he acted with reasonable diligence in filing his habeas petition.  A determination of whether the petitioner has exercised reasonable diligence is made under a subjective test and in consideration of the totality of the circumstances.  See Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004).  "If a petitioner has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is severed and the extraordinary circumstances did not prevent timely filing." (Doc. 16, p. 16); see Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003).

In his Objections, Petitioner asserts that he would have filed a protective stay and abeyance petition had Vaughn not stated that he did not see an issue with

---

[1]Notably, "[t]he United States Supreme Court's decision in Martinez v. Ryan, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), relating to ineffective assistance of PCRA counsel, does not entitle [Petitioner] to equitable tolling.  The Martinez decision impacts cases where claims are otherwise procedurally defaulted, but has no bearing on a petitioner's obligation to file a federal petition within the federal limitations period." McGrue v. Kerestes, 2014 U.S. Dist. LEXIS 73826, *9 (E.D. Pa. 2014).

the late filing of the PCRA appeal on September 6, 2011. (Doc. 16, pp. 5-6). In a letter from Vaughn to Petitioner, Vaughn stated, "I do not believe this [late PCRA appeal filing] will present any problems for us. If the timeliness becomes an issue, however, I will clean it up. Do not worry about it at this time." (Id. at 5).

Petitioner also alleged:

> If Mr. Vaughn had instead correctly informed Mr. DeShields that an untimely filed notice of appeal was not subject to 28 U.S.C. § 2244(d)(2)'s tolling provisions and that his one-year statute of limitation under 28 U.S.C. § 2244(d)(1) would not continue to lapse [sic] while reinstatement of appellate rights were sought to exhaust constitutional claims, Mr. DeShields would have immediately filed for a Protective Stay-and-Abeyance.

(Id.). However, at no point in time did Vaughn state that timeliness was not an issue for purposes of federal habeas review. Rather, Vaughn simply stated, "I received the court's order today [September 12, 2011] directing me to file a statement of matters complained of by September 28[, 2011]. I, therefore, do not think the timeliness of the notice of appeal is an issue whatsoever." (Doc. 14-1, p. 10). Therfore, while Vaughn's untimely filing of the PCRA appeal acted as an impediment to Petitioner's state relief, Vaughn's actions and statements regarding the untimeliness of the PCRA appeal did not hinder Petitioner from filing a federal habeas petition or a petition for stay-and-abeyance in a timely fashion. See Rhines

14

v. Weber, 544 U.S. 269, 278 (2005); Heleva v. Brooks, 581 F.3d 187, 190-92 (3d

Cir. 2009) (discussing the practice of filing "protective" habeas petitions in the

Third Circuit); Jackson v. Coleman, 2013 WL 4083859 (M.D. Pa. Aug. 13, 2013)

(dismissing the habeas corpus petition as time-barred where the petitioner still had

time remaining to file a habeas petition after counsel ceased representation of the

petitioner.).

    This Court agrees with Magistrate Judge Schwab that Petitioner failed to

exercise reasonable diligence in filing his habeas petition.  Before Petitioner even

filed his PCRA petition, three hundred four (304) days of his one-year statute of

limitations for seeking habeas relief had already passed.  After he discovered on

September 6, 2011 that Vaughn did not timely file his PCRA appeal by the

deadline of August 25, 2011, he still had forty-nine (49) days to timely file his

habeas petition.  However, Petitioner did not file his habeas petition until July 18,

2013.

    Therefore, Petitioner has failed to prove that the circumstances warrant the

application of equitable tolling of the one-year habeas petition statute of

limitations because he has failed to prove that extraordinary circumstances existed

in preventing the timely filing of his habeas petition, and has also failed to prove

that he acted with reasonable diligence in filing his petition once he discovered

that his PCRA appeal was untimely filed.

### 3.    **Lack of Merit**

On initial review of Petitioner's claims, and with mindfulness that Respondents have not yet filed a response to the habeas petition, this Court finds that even if Vaughn had timely filed Petitioner's PCRA appeal, the underlying and identical issues raised in his PCRA petition, appeals and the instant habeas petition lack merit. Petitioner asserts that his Sixth Amendment right to effective assistance of counsel was violated by Leslie, and he therefore is entitled to habeas relief. (Doc. 1, p. 15). Petitioner claims that his Sixth Amendment right to effectiveness of counsel was violated because Leslie: (1) did not present the Brady claim on direct appeal, thereby causing it to be waived; (2) did not call Valcarcel as a witness; (3) did not request a "cautionary instruction following the replaying of Rodney Pickney's audio statement"; and (4) did not request a Kloiber jury instruction. (Id.).

According to 28 U.S.C. § 2254(a), federal habeas relief is only available for claims that involve a federal question independent of the state claim. "This Court will not take up a question of federal law presented in a case 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Lee v. Kemna, 534 U.S. 362,

375 (2002) (quoting <u>Coleman</u>, 501 U.S. at 729). "The Rule applies with equal force whether the state-law ground is substantive or procedural." <u>Kemna</u>, 534 U.S. at 375. Clearly, Petitioner's habeas claim presents a federal question as it concerns the Sixth Amendment, and thus the remaining issue for this Court to decide is whether this claim has merit.

Pursuant to 28 U.S.C. § 2254(d)(1), a habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law...." 28 U.S.C. § 2254(d)(1). Clearly established federal law is defined as "the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529, U.S. 362, 412 (2000). "A state-court decision is 'contrary' to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." <u>Brown v. Peyton</u>, 544 U.S. 133, 141 (2005). "A state-court decision involves an 'unreasonable application' of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." <u>Id.</u> at 141. "The range of

reasonable judgment can depend in part on the nature of the relevant rule."

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> If a legal rule is specific, the range may be narrow.
> Applications of the rule may be plainly correct or incorrect.
> Other rules are more general, and their meaning must emerge in
> application over the course of time. Applying a general
> standard to a specific case can demand a substantial element of
> judgment. As a result, evaluating whether a rule application
> was unreasonable requires considering the rule's specificity.
> The more general the rule, the more leeway courts have in
> reaching outcomes in case-by-case determinations.

Id. "The question . . . is not whether a federal court believes the state court's

determination was incorrect, but whether that determination was unreasonable – a

substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939-40

(2007).

### a.   Failure to Raise Brady Violation on Appeal

Petitioner contends that the Commonwealth's failure to provide the defense

with the transcript of the bench warrant hearing of witness Varcarcel violated the

Supreme Court's decision in Brady v. Maryland, 373 U.S. 83 (1963), and that his

counsel was ineffective in failing to raise a Brady claim on appeal. In Brady, the

Supreme Court held that the due process rights of a defendant are violated when

the prosecution withholds favorable, material evidence from the defense. Id. To

prove a Brady violation, the petitioner bears the burden of demonstrating that: "(1)

18

the prosecutor suppressed evidence; (2) the evidence, whether exculpatory or impeaching, was helpful to the [petitioner], and (3) the suppression prejudiced the [petitioner]." Commonwealth v. Collins, 888 A.2d 564, 577-78 (Pa. 2005) (citing Brady, 373 U.S. at 83). To establish prejudice, the petitioner must prove that there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Commonwealth v. Paddy, 15 A.3d 431, 450 (Pa. 2011).[2]

Based on these standards, the Superior Court held that regardless of whether the prosecutor suppressed any favorable evidence in not disclosing the testimony of Valcarcel, because the defense counsel testified that he would not have called on this witness to testify on Petitioner's behalf, Petitioner could not prove with reasonable probability that the result of the proceeding would have been different. (Doc. 1, p. 23); See Greene, 527 U.S. at 281 (holding, "evidence is "material" for

---

[2]In Stickler v. Greene, 527 U.S. 263, 281-82 (1999), the United States Supreme Court identified the following Brady standard that is identical to the one used by the Superior Court:

> There are three components of a true Brady violation: The evidence at issue must be favorable to the accused either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

purposes of <u>Brady</u> if "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.").

Review of the record substantiates the Superior Court's holding that the testimony provided by Valcarcel at the bench warrant hearing was not material, and Petitioner was not prejudiced by counsel's failure to object to the prosecution's failure to present the evidence at trial because had the evidence been presented, the result of the trial would not have been different. On March 18, 2008, the YCCP conducted a bench warrant examination of Valcarcel. The witness was called by the prosecution because another witness "Mace Murder" stated in a police report that Petitioner had stolen his cell phone before the murder and then used it to call Valcarcel after he murdered Varcarcel's brother, Theo, in order to taunt him. (Doc. 12-1, pp. 59-61). In examining the transcript of the March 18, 2008, bench warrant testimony of Valcarcel, when the presiding judge of the hearing asked Valcarcel whether he had any knowledge of this aforementioned phone call, he testified that he did not. (<u>Id.</u> at 66). Moreover, he testified that shortly after the death of his brother, he did not receive a call on his cell phone. (<u>Id.</u> at 72). When the prosecution asked Varcarcel for his cell phone number, he responded that it was 424-1725, and that this was his only cell phone

number at the time his brother was murdered. (Doc. 12-1, p. 74). He denied

having another cell phone that began with the numbers 650, which was the number

allegedly dialed by Petitioner after the murder. (Id.).

Because Varcarcel denied having any knowledge whatsoever regarding

Mace Murder's testimony that Petitioner stole another witness' phone and used it

after the murder of Theo Varcarcel to call Lloyd Varcarcel and taunt him, this

evidence was not helpful to Petitioner, and did not prejudice him because there

was no reasonable probability that had this bench warrant hearing testimony been

disclosed to the defense, the result of the proceeding would have been different.

Consequently, the Superior Court's decision to deny Petitioner's ineffective

assistance of counsel claim based on Leslie's failure to raise a <u>Brady</u> violation on

appeal was based on federal standards, and was not contrary to, or an unreasonable

application of, clearly established federal law. Petitioner has not provided this

Court with clear and convincing evidence to the contrary. Therefore, on initial

review, this Court agrees with the Superior Court's denial of Petitioner's PCRA

appeal regarding this claim.

### b.    <u>Failure to Call Witness</u>

Regarding Petitioner's claim that Leslie was ineffective for failing to call

witness Varcarcel to testify, the Superior Court denied Petitioner's appeal to the

PCRA court's ruling because Petitioner did not demonstrate that this claim was of

arguable merit.  The Superior Court highlighted the principles of law used in

determining whether trial counsel is ineffective:

> In order for [Petitioner] to prevail on a claim of ineffective
> assistance of counsel, he must show, by a preponderance of the
> evidence, ineffective assistance of counsel which, in the
> circumstances of the particular case, so undermined the truth-
> determining process that no reliable adjudication of guilty or
> innocence could have taken place ... [Petitioner] must
> demonstrate: (1) the underlying claim is of arguable merit; (2)
> that counsel had no reasonable strategic basis; and (3) but for
> the errors and omissions of counsel, there is a reasonable
> probability that the proceedings would have been different.

(Doc. 1, p. 20) (citing Commonwealth v. Jones, 868 A.2d 1278, 1281 (Pa. Super.

2005)).  The Pennsylvania Superior Court has also held that in order to establish

arguable merit for a claim that counsel was ineffective for failing to call a witness,

the petitioner must prove the following: (1) that the witness existed, and was

available and willing to testify for the defense; (2) that counsel knew of, or should

have known of, the existence of the witness; and (3) that the absence of testimony

of the witness was so prejudicial as to have denied the defendant a fair trial.

Commonwealth v. Matias, 63 A.3d 807, 810-11 (Pa. Super. 2013).  "A petitioner

must show how the uncalled witnesses' testimony would have been beneficial

under the circumstances of the case." Commonwealth v. Sneed, 45 A.3d 1096,

1109 (Pa. 2012). Counsel will not be found ineffective for failing to call a witness "unless the petitioner can show that the witness's testimony would have been helpful to the defense." Sneed, 45 A.3d at 1109. Also, "[a] failure to call a witness is not per se ineffective assistance of counsel for such decision usually involves matters of trial strategy." Id.

Based on these standards, the Superior Court stated the following:

> [W]e agree with the PCRA court that counsel was not ineffective for failing to call Lloyed Valcarcel to testify at trial. Counsel testified that he would not have called Valcarcel to testify even if he had known of the hearing and transcript prior to trial. Further, DeShields fails to aver that Valcarcel was willing [and] available to testify for the defense . . . [t]his failure alone is fatal to DeShields' claim.

(Doc. 1, p. 22). Therefore, the Superior Court denied this part of Petitioner's PCRA appeal because the claim had no arguable merit, which, as stated, is an element that must be demonstrated in order for a petitioner to succeed on an ineffectiveness claim. This Court agrees with the Superior Court's analysis of this claim. Initially, it is true that Petitioner did not aver that Varcarcel was available and willing to testify, and on this ground alone, the claim is without arguable merit.

Moreover, even if Petitioner had effectively pled these requirements, the claim would still fail because Petitioner did not prove that counsel was deficient in

not calling the witness or that he was prejudiced by counsel's failure to call Varcarcel as a witness.  In order to establish a Sixth Amendment ineffectiveness claim, the standard is identical to the aforementioned one addressed by the Superior Court, because a petitioner must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's performance was prejudicial to the defense.  Strickland v. Washington, 466 U.S. 668 (1984).  "The proper standard for attorney performance is that of 'reasonably effective assistance.'"  Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (quoting Wiggins v. Smith, 539 U.S. 510, 522-23 (2003)).  There is a strong presumption that counsel is effective, and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions.  Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003).  The mere existence of alternative, even more preferable or more effective strategies does not satisfy the first prong of the Strickland test. Marshall, 307 F.3d at 86.

To establish prejudice under the second prong, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Roe v. Flores-Ortega, 528 U.S. 470, 482 (2000) (quoting Strickland, 466 U.S. at 694).  It is not necessary for

24

the court to "guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." Hendricks, 307 F.3d at 86. The court must consider the totality of the evidence, and the burden is on the petitioner. Strickland, 466 U.S. at 687, 695.

Additionally, there is a "doubly deferential review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003)). "The question 'is not whether a federal court believes the state court's determination' [but rather] '. . . whether that determination was unreasonable - - a substantially higher threshold.'" Knowles, 556 U.S. at 123 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)); Rico v. Leftridge-Byrd, 340 F.3d 178, 181 (3d Cir. 2003) (stating that a "state court decision based on a factual determination, such as that required under § 2254(d)(2), will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding."). The federal court "must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence." Rico, 340 F.3d at 181 (citing 28 U.S.C. § 2254(e)(1)); Campbell v.